UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

IN RE:

PALM BEACH MARITIME FOUNDATION,          Case No. 15-31871-PGH
INC.,
       Debtor.                                   Chapter 11
_____/

## PALM BEACH MARITIME MUSEUM, INC.'S
## MOTION TO DISMISS THE CHAPTER 11 CASE

Palm Beach Maritime Museum, Inc. ("PBMM"), by and through undersigned counsel, and pursuant to 11 U.S.C. § 1112(b)(1) and Fed. R. Bankr. P. 1017(f) and 2002, hereby files its *Motion to Dismiss the Chapter 11 Case* (the "Motion"). In support of its Motion, PBMM states as follows:

### INTRODUCTION

This is not a Chapter 11 case where a debtor is seeking to reorganize its business affairs or provide for the orderly liquidation of its assets. This is true because this Debtor has no assets of any tangible value other than litigation claims for breach of and tortious interference with a previously terminated management which are currently pending in state court in Palm Beach County, Florida. The only other asset owned by the Debtor is a membership interest in the Movant, a not-for-profit entity called Palm Beach Maritime Museum, Inc. ("PBMM" or "Movant") which has no value and cannot be sold on the open market because the membership interest only provides for certain and limited governance rights over the operational affairs of PBMM with no economic benefit to ownership. Instead, and as admitted by the Debtor and his counsel at the 341 Meeting conducted on January 22, 2016, this Chapter 11 case was filed for the

sole purpose of "forum shopping" so that the Debtor could seek a more sympathetic court to adjudicate its claim of the right to control PBMM as the Debtor was receiving adverse rulings in the pending state court action described below.

The record before this Court is replete with evidence warranting a finding of bad faith on behalf of the Debtor and necessitating the entry of an order dismissing the Debtor's voluntary petition for "cause" pursuant to § 1112(b)(1).  First, the Debtor itself concedes in its Schedules and testimony at the 341 Meeting that is not engaged in any business, has no employees or otherwise any tangible assets to liquidate or administer.  As for creditors, other than claims owed to PBMM and its prior state court counsel, the Debtor's Schedules reveal only contingent unliquidated debt associated with certain bond obligations owed by PBMM to US National Bank as Trustee which are currently the subject of a forbearance agreement. Additionally, there is no real possibility of reorganization because the Debtor, by its own documents and admissions, has no business to reorganize. The Debtor previously received income from a management agreement it was a party to with PBMM; however, that management agreement was terminated prior to the Debtor's Chapter 11 filing and the Debtor has not scheduled it as an asset/executory contract on Schedule G of its Bankruptcy Schedules.  Therefore, the terminated management agreement is not capable of assumption under Section 365 of the Bankruptcy Code and the Debtor does not otherwise have a source of revenue to fund a Chapter 11 Plan. \

The Debtor's legal and financial problems consist almost entirely of its disputes with PBMM and that dispute is primarily limited to who gets to control the business affairs of PBMM—the current board of directors or former board of directors. This dispute was already pending in state court in Palm Beach County and its patently obvious that this Debtor is attempting to utilize this Court's jurisdiction for the sole and improper purpose of circumventing

the pending state court action with PBMM (involving only substantive state law issues) and forum shopping to find what it hopes is a more favorable forum for the litigation. As more particularly set forth below, this filing is a text book example of "bad faith" and, as such, dismissal for cause is warranted.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue of this case and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicate for the relief requested in this Motion is Section 1112(b) and of the Bankruptcy Code, as complemented by Rules 1017 and 2002 of the Federal Rules of Bankruptcy Procedure.

## FACTUAL BACKGROUND

4.      The Debtor, Palm Beach Maritime Foundation, Inc. (the "Foundation" or the "Debtor"), is a Maryland not-for-profit corporation registered to do business in the state of Florida, with a principal place of business located at 4512 N. Flagler Drive, Ste. 306, West Palm Beach, FL 33407.

5.      PBMM, a Florida not-for-profit corporation whose principal place of business is located in Palm Beach County, Florida, operates two (2) public charter schools in Palm Beach County, Palm Beach Maritime Academy (the "Academy") (currently serving grades K - 8) and Palm Beach Maritime Academy High School (the "High School") (currently serving grades 9 - 11) (collectively, the "Charter Schools").

6.      The Charter Schools are governed by a volunteer, unpaid Board of Directors (the

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

"PBMM Board") and are also governed by and operated pursuant to Section 1002.33, *et, seq.*, Florida Statutes (the "Florida Charter Statute").[1]

7.    Operation of charter schools in Florida is governed by the Charter Statute as well as by contracts, commonly referred to as "charter contracts." Section 1002.33(7), Florida Statutes. Charter schools must be nonprofit organizations. Section 1002.33(12)(i), Florida Statutes. A charter school enters into charter contracts with a sponsor. Section 1002.33(7), Florida Statutes.

8.    The sponsor for the Academy and High School is the Palm Beach County School District ("School District") and the School District and PBMM have entered into two separate Charter Contracts for the Academy. The Charter Contracts for the Academy are attached as Composite Exhibit "B" to Exhibit 2 to this Motion.

9.    While the Charter Contracts allow PBMM to have a member such as the Debtor, they specifically require that the PBMM Board of Directors exclusively manage the activities and affairs of its charter school(s), remain responsible for its operation, establish all of its policies and make all of its policy-related decisions. Charter Contracts §§ VIII.B.2.-6.

10.    The Debtor is the sole member of PBMM, and the Debtor's *limited* rights as the sole member of PBMM are set forth in and governed by PBMM's Amended and Restated Articles of Incorporation and Amended and Restated Bylaws. These limited rights include primarily "approval rights" over amendments to PBMM's Articles of Incorporation and By-Laws. Copies of PBMM's Amended and Restated Articles of Incorporation and Amended and Restated Bylaws are attached as Composite Exhibit "A" to Exhibit 2 to this Motion.

---

[1] In addition to the Charter Schools, PBMM also owns and operates the Palm Beach Maritime Museum (the "Museum"), with facilities at Currie Park in the City of West Palm Beach and Peanut Island in the Intercostal Waterway to the east of Riviera Beach. PBMM is also the parent company of Ocean Learning Systems, LLC, a wholly-owned subsidiary and Florida limited liability company operated by the PBMM Board.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

11.     PBMM is not required to consult with the Debtor as to its operations.  Section 6.8 of the PBMM Amended Bylaws provides:

> 6.8.     <u>No Duty to Consult</u>.  Except as otherwise provided herein, the [PBMM Board of] Directors shall have no duty or obligation to consult with or seek the advice of the Member [Foundation] in connection with the conduct of the business of the Corporation.

12.     John C. Grant is the Chairman, President, and Director of the Debtor, and the former CEO of PBMM, a former member of the PBMM Board, and former Superintendent of the Charter Schools.

**B.     The Pre-Petition Corporate Governance Dispute**

13.     Commencing in or about late 2013, staff for PBMM began to suspect that Grant, together with other former members of the PBMM Board, had engaged in certain behaviors in direct violation of Florida and federal law, specifically tax fraud and violations of the Florida's Charter Statute.

14.     On December 3, 2014, the PBMM Board received correspondence from counsel to the Debtor seeking to document and confirm an alleged agreement to transfer certain non-school related assets held by PBMM to the Debtor for "operation and maintenance."[2]  The December 3, 2014 correspondence showed the clear intent of Grant and the Debtor to exercise authority **not** granted to the Debtor through any enforceable agreement and/or the operative By-Laws and Articles of Incorporation.

15.     PBMM board members, alarmed by the allegations of wrongdoing lodged against former members of the PBMM Board, including Grant, and alerted by the substance of the December 3, 2014 correspondence which so grossly misconstrued the nature of the Debtor's relationship with PBMM, started openly voicing their (i) dissatisfaction of the services provided

---

[2]     A copy of the December 3, 2014 correspondence is attached as Exhibit D to Exhibit 2 to this Motion.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

by the Debtor under the Management Agreement[3]; (ii) concerns over the Debtor's improper attempt to misappropriate PBMM's assets, as evidenced by the December 3, 2014 correspondence; and (iii) alarm over the terms of millions in bond debt incurred by Grant and the Debtor purportedly on behalf of the Charter Schools (the "Bonds").[4]

16.    In the wake of PBMM Board's publically voiced concerns, the Debtor, in a blatant attempt to abuse its limited governing rights, attempted to remove standing members of PBMM Board and install a new board (the "Purported PBMM Board") more amenable to the Debtor's efforts to misappropriate PBMM's assets. The resulting corporate governance dispute by and between the Debtor and the Purported PBMM Board on one hand, and PBMM and the PBMM Board, on the other, culminated in the commencement of litigation at the state court level over control of PBMM.

**C.    State Court Litigation**

17.    On August 14, 2015, the Debtor commenced a lawsuit by the filing of a complaint in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, in a case styled as *Palm Beach Maritime Foundation, Inc., v. Palm Beach Maritime Museum, Inc., et al.*

---

[3]    On or about June 26, 2014, the Debtor and PBMM entered into a contract wherein the Debtor would provide management services to PBMM for operation of the Charter Schools (the "Management Agreement"). The Management Agreement was separate and distinct from the Debtor's limited duties and responsibilities as the sole member of PBMM. The Management Agreement was terminated prepetition and is not listed as an assumable contract on the Debtor's Schedule "G" to its Bankruptcy Schedules. A copy of the terminated Management Agreement is attached as Exhibit "C" to Exhibit 2 to this Motion.

[4]    In June 2014 PBMM entered into a loan agreement for the proceeds from the issuance of taxable and tax exempt revenue bonds with US Bank as Trustee for the bond holders (the "Bondholders"). There is an ongoing dispute as to whether the terms of the loan agreement authorized by the PBMM Board were the same as those in the executed loan agreement. The Bondholders have been working with PBMM to restructure the bonds so that a financially sustainable payment structure can be achieved. The actions of the Debtor and the Purported PBMM Board have caused uncertainty as to restructuring efforts and the legal expenses PBMM may incur. As a result, it is believed that the Bondholders have determined that they will enter into a forbearance agreement with PBMM instead of restructuring the bonds at this time.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

(Case No. 502015CA008664) (the "State Court Action").[5]

18.     The State Court Action asserts: A) a damage claim against PBMM for an alleged breach of the previously terminated Management Agreement; b) specific performance of an alleged oral agreement to transfer certain assets of PBMM to the Debtor; c) a declaratory injunction action seeking a ruling that the Debtor controls the Board of PBMM; d) injunctive relief that the current members of the PBMM board cannot take action as board members; and e) a damage claim against the current Board of Directors of PBMM for alleged tortious interference with the Debtor's rights under the since terminated Management Agreement.

19.     PBMM responded to the complaint and also filed a counterclaim (the "Counterclaim") against Grant and other counter-defendants on October 16, 2015.[6]

20.     The Counterclaim seeks declaratory and injunctive relief related to the corporate governance rights of PBMM, and also asserts claims against the Debtor, Grant, and two other former PBMM Board members based upon breach of fiduciary duty, replevin, tortious interference, breach of contract, and conversion.

21.     The State Court Action has been pending since August of 2015, and involves substantive issues of law arising under Florida's Charter Statute.

22.     The State Court has deferred ruling on the Debtor's efforts at obtaining a temporary injunction allowing it to manage PBMM and has already ruled on several substantive issues in favor of PBMM and its construction of the PBMM Articles of Incorporation which PBMM believes was the catalyst of this instant filing so that the Debtor could obtain what they hope is a more favorable court to finally adjudicate these issues.  A true and correct copy of the

---

[5]     A true and correct copy of the operative complaint, the *Second Amended Complaint*, is attached hereto and incorporated herein as **Exhibit 1.**

[6]     A true and correct copy of PBMM's Counterclaim is attached hereto and incorporated herein as **Exhibit 2.**

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

last Injunction Order is attached hereto as Ex. 3.

**D.**     **The Foundation files for Bankruptcy**

22.     On December 18, 2015 (the "Petition Date"), four (4) months after the commencement of the State Court Act and after the State Court ruled on certain substantive issues and discovery had been served by PBMM, the Debtor filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code. (ECF No. 1).

23.     A review of the Debtor's Schedules [ECF No. 1] and Case Management Summary [ECF No. 3] reveals no assets owned by the Debtor other than a breach of contract claim, no employees, and no revenues necessary for reorganization purposes.[7]

24.     As for creditors, the Debtor's Schedules reveals only contingent unliquidated debt associated with the Debtor's guaranty of the Bonds and fees owed to its former counsel in the State Court Action; however, the contingent bond debt is subject to a forbearance agreement.

25.     Finally, shortly after the Petition Date, the Debtor filed a notice of removal of the State Court Action to this Bankruptcy Court in a transparent effort to forum shop the adjudication of the corporate governance issues. *See Adv. No*. 16-1090.

## RELIEF REQUESTED

26.     Through this Motion, PBMM requests the entry of an Order dismissing this Chapter 11 case for "cause", together with any such other relief as may be just and proper.

## BASIS FOR RELIEF REQUESTED

27.     Pursuant to Section 1112(b)(1) of the Bankruptcy Code, after notice and hearing the Court *shall* dismiss or convert a case for "cause," whichever is in the best interests of creditors and the estate, unless the Court determines that the appointment of a trustee under

---

[7]     Indeed, the Disclosure of Compensation Form [ECF No. 2] reveals that the Debtor's attorney's fees are being paid by Grant, individually.

{37576579;2}      - 8 -

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

Section 1104 is in the creditors' and estate's best interests. 11 U.S.C. § 1112(b)(1).[8]

28.     In determining what constitutes "cause" under the Code, "the court may consider other factors as they arise, and use its equitable powers to reach an appropriate result in individual cases." *Albany Partners*, 749 F.2d, 670, 674 (11th Circuit 1984) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 406 [1977], U.S.Code Cong. & Admin. News 1978, pp. 5787, 6362).

29.     Of particular importance here, the Eleventh Circuit has determined that a debtor's bad faith in filing its petition for relief constitutes cause for dismissal of the bankruptcy case. *See In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988); *Albany Partners*, 749 F.2d at 674.

30.     The Eleventh Circuit has explained that in determining whether a bankruptcy case has been filed in bad faith, "the courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions.'" *Phoenix Piccadilly*, 849 F.2d at 1394 (quoting *Albany Partners*, 749 F.2d at 674). More precisely, the Eleventh Circuit has determined that the following factors evidence a bad faith filing: (1) the debtor has only one asset to which it does not hold legal title; (2) the debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors; (3) the debtor has few employees; (4) the debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in pending proceedings; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the lack of a realistic possibility of an effective reorganization; and (7) whether the debtor is seeking to use the bankruptcy provisions to create

---

[8]     In cases involving a not for profit debtor, conversion to a Chapter 7 is precluded without the debtor's consent. 11 U.S.C. § 1112(c).

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

and organize a new business, not to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business. *Id at* 1394.

31.     In this case, the Debtor itself concedes that is not engaged in any business and has no employees or income.   As for creditors, the Debtor's Schedules reveals only contingent unliquidated debt associated with the Debtor's guaranty of the Bonds (with the Bonds currently under forbearance) and fees owed to former counsel in the State Court Action.  As such, there is no real possibility of reorganization because the Debtor, by its own admissions, has nothing to reorganize, no tangible assets to contribute to a Chapter 11 Plan, and a limited creditor body affected by the Debtor's filing.

32.     Furthermore, "courts have recognized factors which show an `intent to abuse the judicial process and the purposes of the reorganization provisions' [when] the petition was filed strictly to circumvent pending litigation. . . ." *In re Dixie Broad. Inc.*, 871 F.2d 1023, 1026-27 (11th Cir. 1989).   Stated otherwise, Chapter 11 does not exist for the purpose of allowing a debtor the option of litigating a dispute with a single party in a forum other than the state court, when the debtor has no other need for the bankruptcy court. *In re Muskogee Envtl. Conservation Co.*, 236 B.R. 57, 68 (Bankr. N.D. Okla. 1999).  For example, the court in *Muskogee* dismissed the Chapter 11 petition, finding it was filed in bad faith where the debtor filed the petition solely to avoid the forum of a state court. The bankruptcy court found it "indisputable that [the debtor] is a solvent debtor engaged in a two-party dispute involving non-bankruptcy law which could readily be resolved by the State Court." *Id.  See also Argus Group 1700 v. Steinman*, 206 B.R. 757, 763 (E.D. Pa. 1997) (dismissal warranted where debtor simply sought a better forum for ongoing litigation).

33.     In this case, the Debtor's own Management Summary [ECF No. 3], details the

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

Debtor's main asset as "Memberhsip [sic] interest which allows for corporate control over Palm Beach Maritime Museum, Inc.. [sic] Palm Beach Maritime Museum Inc. Has [sic] numerous assets including Palm Beach Maritime Academy, and revenue stemming from both the museum and the academy." *See* Case Management Summary, ¶ 9.    Thus, by its own admission, the Debtor's most important asset is the membership interest in PBMM which only allows for limited corporate governance rights and otherwise has nonexistent economic value.

34.    Again, the record is clear that the Debtor's problems, if any, involve essentially a dispute between the Debtor and PBMM over control of PBMM which can more effectively and efficaciously be resolved in the State Court Action.  PBMM respectfully submits that this type of dispute, ie. corporate governance issues, is best left to the State Court and the Bankruptcy Court should dismiss this case as resolution of the corporate governance issues does not further the purposes of Chapter 11.

35.    In summary, this Debtor filed this Chapter 11 case for an improper purpose, to wit, seek a more favorable forum to litigate corporate governance issues over the control of PBMM.  The Debtor otherwise has nothing to reorganize as it has limited tangible assets, no employees, no revenues to support a reorganization, and minimal creditors who will be benefitted by a Chapter 11 case.  As this is clearly a bad faith filing, this Court must dismiss the Debtor's Petition for cause, pursuant to § 1112.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

**WHEREFORE,** Palm Beach Maritime Museum, Inc.  respectfully requests that the Court enter an Order: *(i)* dismissing this Chapter 11 case; and *(ii)* awarding PBMM  any such other relief as the Court may deem just and proper.

**AKERMAN LLP**
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301-2999
Phone:  (954) 463-2700
Fax:  (954) 463-2224

/s/ D. Brett Marks, Esq.
D. Brett Marks, Esq.
Florida Bar Number: 0099635
Catherine E. Douglas, Esq.
Florida Bar Number:  085843
Email:  catherine.douglas@akerman.com
Email:  brett.marks@akerman.com

*Counsel for Palm Beach Maritime Museum, Inc.*

**COLE, SCOTT & KISSANE, P.A.**
Katie M. Merwin, Esq.
1645 Palm Beach Lakes Blvd., 2nd Floor
West Palm Beach, Florida 33401
Telephone: (561) 383-9200
Facsimile: (561) 683-8977

*Co-Counsel for Palm Beach Maritime Museum, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via CM/ECF electronic mail and/or U.S. mail this February 25, 2016 to all parties listed on the attached service list.

By:  /s/ D. Brett Marks, Esquire

## SERVICE LIST

**15-31871-PGH Notice will be electronically mailed to:**

Brian S Behar, Esq on behalf of Creditor Behar, Gutt & Glazer, P.A.
bsb@bgglaw.net

Angelo A Gasparri on behalf of Debtor Palm Beach Maritime Foundation, Inc
angelo@drlclaw.com, drlc.pbc@gmail.com;robert@drlclaw.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999